RONALD KNIEF, Indiv. and as Special Adm'r of the Estate of Christopher L. Knief, Plaintiff-Appellant, v. GEORGE SOTOS *et al.*, Defendants-Appellees.

Second District   No. 2—88—0475

Opinion filed February 9, 1989.—Rehearing denied May 24, 1989.

Josette Skelnik, of Robinson & Skelnik, of Elgin, for appellant.

Thomas P. Scherschel, Michael Resis, and Victor J. Piekarski, all of Querrey & Harrow, Ltd., of Chicago, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Ronald Knief, appeals from an order of the circuit court of Kane County granting a motion for summary judgment in favor of defendants, George Sotos and Andrew Booras, and the Blue Moon Ballroom and Lounge, Inc. (Blue Moon). Plaintiff also appeals from the circuit court's order partially denying his motion to compel discovery. Plaintiff raises two issues on appeal: (1) whether summary judgment is proper in an action under section 6—12 of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1985, ch. 43, par. 135) when the pleadings showed that the driver had consumed alcohol at the defendants' establishment and affidavits attested to unusual behavior on the part of the driver; and (2) whether the statements of a head manager and a head waitress of a restaurant bar are privileged from disclosure under the attorney-client privilege.

On July 17, 1987, plaintiff, individually and as special administrator for the estate of Christopher Knief, filed a complaint under section 6—21 of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1985, ch. 43, par. 135) and section 27—6 of the Probate Act of 1975 (Ill.

Rev. Stat. 1985, ch. 110½, par. 27—6) against defendants Sotos and Booras individually and doing business as the Blue Moon. The complaint alleged that on September 13, 1986, at approximately 10 p.m., Doreen Service, a waitress employed by defendants, was served an alcoholic beverage at the Blue Moon; that she left the Blue Moon with another Blue Moon employee, Debra Patel, in Service's car; and that the Blue Moon is located at 1900 Larkin Court, Elgin, Illinois. Plaintiff further alleged that Service was driving the car near 1500 Larkin Court at approximately 10:45 p.m. and that she struck and killed plaintiff's decedent, Christopher Knief, as he lay with his bicycle in the road.

In their answer, defendants admitted that on September 13, 1986, Service was served an alcoholic drink, a tequila sunrise, at defendants' restaurant bar. Blue Moon denied that Service became intoxicated as a result of the one drink. In an answer to one of plaintiff's interrogatories, Blue Moon stated that Service was given a tequila sunrise at approximately 10 p.m. and that Patel did not have anything to drink.

On January 19, 1988, defendants filed a motion for summary judgment. On March 23, 1988, plaintiff filed a motion to compel compliance with his discovery requests. Plaintiff sought statements taken from employees of Blue Moon who would have knowledge of the sale or gift of alcohol to Service. Defendants had taken the statements of Service, Patel, Rita Price, Mary Leffler, the head waitress, and Kenneth Cornelissen, the head manager. Defendants refused to provide these statements to plaintiff, claiming that they were privileged statements of agents of Blue Moon. The court granted plaintiff's motion as to the statements of Service and Patel but denied it as to the statements of Cornelissen and Leffler, because the court decided that they were members of the corporate control group.

At the hearing on the motion for summary judgment, plaintiff presented the affidavit of Dr. William Hillman, an expert in substance abuse. Dr. Hillman's affidavit averred that a person could become intoxicated after consuming only one alcoholic drink.

Plaintiff also presented the affidavit of Timothy Daniels. In his affidavit, Daniels stated that he was driving his car on Larkin Court at approximately 10:45 p.m. on September 13, 1986. He had two passengers in his car. He stated that when he reached the 1500 block of Larkin Court, he saw Christopher lying in the road with his bicycle. Daniels averred that he had to swerve his car in a broad arc to avoid hitting the boy. Daniels turned his car around and returned

to where Christopher lay. Before Daniels could reach him, the car that was traveling behind Daniels hit Christopher. In Daniels' opinion, the driver of the other car should have been able to avoid hitting the boy, especially since Daniels swerved his car broadly so that the car behind his should have noticed that there was some hazard in the road.

Plaintiff also introduced the affidavit of one of Daniels' passengers, Becky Paulus. Paulus stated that she felt the car swerve "real hard" to avoid hitting something. She turned around to see what it was. Paulus asserted that she saw Christopher lying in the road. She also saw the car that was traveling behind them hit Christopher. Paulus averred that the car did not stop or slow down to avoid hitting Christopher. It was Paulus' opinion that she guessed that the other driver did not see the boy and his bicycle lying in the road.

Plaintiff next introduced the affidavit of William Mallette. Mallette stated that he was driving on Larkin Court shortly after the accident. He stopped his car because he recognized Christopher. Mallette averred that he approached a white Chevrolet when the police were opening the door of the car. Mallette asserted that he smelled a very strong odor of alcohol coming from inside the car. In Mallette's opinion, the police officers were being evasive and trying to "cover something up" when he asked whether the driver would be charged with drunk driving. Mallette later learned that the driver of the white Chevrolet was Service.

Plaintiff argued that the affidavits and defendants' admissions established evidence of Service's intoxication. The trial court found that parts of the affidavits of Daniels, Paulus, and Mallette consisted only of conjecture or inferences. Despite evidence that tended to establish that Service did not exercise ordinary care, the court decided that there was no evidence of intoxication. The trial court found that a jury could conclude that Service was negligent. When plaintiff asked whether the evidence tended to establish that Service's behavior was unusual, the court responded that the evidence "does not sustain any indication of any intoxication. It might be unusual behavior, but that can be pled as negligence of [Service] rather than intoxication." Consequently, the court granted defendants' motion for summary judgment.

■■ ■ Plaintiff's first contention on appeal is that he presented enough evidence of Service's intoxication to survive a summary judgment motion. Summary judgment should be granted only when the pleadings, depositions, admissions on file, and affidavits present

no genuine issue of material fact. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) On a summary judgment motion, the court must construe the pleadings, depositions, and affidavits strictly against the movant and liberally in favor of the opponent. (*In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177.) Summary judgment is an expeditious method of disposing of a lawsuit and should only be allowed when the right of the party moving for summary judgment is free from doubt. (*Kelman v. University of Chicago* (1988), 166 Ill. App. 3d 137, 141.) While the plaintiff has an affirmative duty to present facts and evidence sufficient to show the existence of a cognizable cause of action when the defendant moves for summary judgment (*McCormick v. Maplehurst Winter Sports, Ltd.* (1988), 166 Ill. App. 3d 93, 98), the plaintiff is not required to prove his case at the summary judgment stage (*Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 399). When responding to a defendant's summary judgment motion, the plaintiff has the burden to bring forth facts which raise an alternate inference. (*Blonder v. Watts* (1988), 166 Ill. App. 3d 633, 636.) The court must draw all reasonable inferences from the evidence in favor of the opponent of the motion. *Bank of Waukegan v. Epilepsy Foundation* (1987), 163 Ill. App. 3d 901, 906.

Liability under the Liquor Control Act of 1934 is predicated on causing the intoxication of a person who injures another. (Ill. Rev. Stat. 1985, ch. 43, par. 135.) " 'A person is "intoxicated" when as a result of drinking alcoholic liquor there is an impairment of his mental or physical faculties so as to diminish his ability to think and act with ordinary care.' " (*Navarro v. Lerman* (1964), 48 Ill. App. 2d 27, 31, quoting Illinois Pattern Jury Instructions, Civil, No. 150.15 (1965).) A person may become intoxicated after drinking only one alcoholic beverage. *Navarro*, 48 Ill. App. 2d at 35.

Plaintiff presented evidence that Service injured Christopher; that the injuries caused by Service resulted in his death; that Service was not using ordinary care at the time of the accident; that Service consumed at least one drink at the Blue Moon; and that the odor of alcohol emanated from Service's car after the accident.

Both plaintiff and defendant have cited several dramshop cases in support of their arguments; however, all of those cases except one are appeals from a directed verdict. Since the standard applicable here is the standard for determining whether summary judgment is proper, these cases are not helpful in resolving the present issue. The only case cited concerning an appeal from an order of summary judgment in a dramshop case is *Reed v. Fleming* (1985), 132 Ill.

App. 3d 722. The court in *Reed* reversed an order of summary judgment granted in favor of the defendants. The issue in that case was not whether the decedent was intoxicated at the time of the accident, but, rather, whether the decedent's intoxication proximately caused the accident. (*Reed*, 132 Ill. App. 3d at 730.) Since proximate cause is not the issue in the present case, *Reed* is not helpful.

■ Whether a person is intoxicated is a question of fact for the jury to decide. (*Mason v. Mundelein Lanes, Inc.* (1979) 72 Ill. App. 3d 990, 997.) Plaintiff argues that the facts presented are evidence that Service was intoxicated at the time of the accident, because she admittedly had a drink, she had alcohol on her breath, because the odor of alcohol coming from the car could not have come from her passenger who had nothing to drink, and that Service's behavior was not normal for a person who was not intoxicated. The evidence showing that Daniels' car swerved broadly could lead to the inference that if Service was not intoxicated, she would have seen the car in front of her swerve, and she too would have swerved or slowed down.

■ Drawing all reasonable inferences in favor of plaintiff, we conclude that where the evidence shows that the driver had consumed at least one drink, negligently caused an accident less than one hour later, and emitted the odor of alcohol immediately after the accident, a genuine issue of material fact exists as to whether the driver was intoxicated at the time of the accident. Therefore, a genuine issue of material fact exists, and the order for summary judgment was improper.

■ ■ Plaintiff's second contention is that the court abused its discretion by finding that the head manager and the head waitress were part of the corporate control group, and, therefore, any statements made by them to defendants' attorney were protected by the attorney-client privilege. The attorney-client privilege bars discovery of statements made to one's attorney so that a client will feel secure in making a full and frank consultation with his or her attorney. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 117-18.) This absolute bar to the discovery of relevant and material evidentiary facts is incompatible with our broad discovery policies designed to uncover the truth. (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 359-60.) Consequently, the burden of showing facts which give rise to the privilege rests on the proponent. (*Consolidation Coal*, 89 Ill. 2d at 119.) To assert the privilege, the proponent must show that the communication was made with an understanding that it would not be disclosed, that it has remained confidential, and

was made to an attorney for the purpose of securing legal advice or service. 89 Ill. 2d at 119.

■■ In the corporate setting, the only privileged communications are those made by top management whose positions permit them to make final decisions, or a member of the corporate control group. (89 Ill. 2d at 120.) Our supreme court has defined a member of the control group as:

> "[A]n employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority ***. *** Thus, if an employee of the status described is consulted for the purpose of determining what legal action the corporation will pursue, his communication is protected from disclosure." (89 Ill. 2d at 120.)

Thus, defendants would need to prove that no final decision as to this litigation would be made without first consulting the head manager and head waitress.

■■ Defendants have presented no evidence of the conditions under which Leffler and Cornelissen made the statements. In addition, defendants have not presented any evidence that the head manager or the head waitress was normally consulted for his or her opinion as to what legal action the corporation should pursue. Defendants did nothing more than list job titles, and the record offers no evidence of what the duties of head manager or head waitress entail. Thus, defendants have failed to meet their burden of establishing the existence of a privilege as to the statements given by these two individuals.

The orders of the circuit court are reversed, and this cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

McLAREN and LINDBERG, JJ., concur.