HERBERT L. NEUSWANGER, Adm'r of the Estate of David Neuswanger, Deceased, Plaintiff-Appellee, v. IKEGAI AMERICA CORPORATION *et al.*, Defendants (Atlantic Mutual Insurance Company, Respondent-Appellant; Robert A. Hoffman, Contemnor).

Third District No. 3—90—0763

Opinion filed October 28, 1991.—Rehearing denied December 16, 1991.

Robert A. Hoffman, of Thomas, Mamer & Haughey, of Champaign, for appellant.

Kehr, Cassidy & Mueller, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Atlantic Mutual Insurance Company (Atlantic Mutual) and attorney Robert A. Hoffman, counsel for Atlantic Mutual, appeal from a September 26, 1990, order of the circuit court of Peoria County directing Atlantic Mutual to produce a certain videotape pursuant to plaintiff's subpoena *duces tecum*, finding Hoffman in contempt of court for willfully refusing to produce the videotape, and imposing a jail sentence on the attorney until such time as the videotape is surrendered. The sanction has been stayed pending resolution of this appeal. The issues presented for our review are: (1) whether the vi-

deotape at issue is protected from discovery by attorney-client or work-product privileges; and (2) whether the court erred in adjudging Hoffman in contempt. We affirm.

The facts relevant to this appeal are not in dispute. The underlying lawsuit arose from an industrial accident. On February 18, 1987, plaintiff's decedent, David E. Neuswanger, was working on a lathe for his employer, Quality Metal Products, Inc. According to the complaint, Neuswanger's head was pinned in the lathe's slide action, and he died as a result of the injuries. Plaintiff brought the instant suit on November 3, 1987, against Ikegai American Corporation, the manufacturer of the lathe. By subsequent amendments, plaintiff has included BME Corporation and its predecessor, Behr Machinery & Equipment Corporation, sales and distributing agent for the lathe, as parties defendant. Quality Metal has not yet been made a party to the suit; however, during the course of discovery, plaintiff served a subpoena *duces tecum* on Quality Metal's workers' compensation insurer, Atlantic Mutual Insurance Co., requesting Atlantic Mutual's entire workers' compensation file for the decedent, including a videotape prepared by a consulting expert in anticipation of litigation.

It is not disputed that the videotape shows the expert's field inspection of the lathe involved in the accident that killed David Neuswanger. Nor is it disputed that in making the videotape Atlantic Mutual's expert employed the same speed, cycle and type of work being performed by plaintiff's decedent when he had his accident. It further appears that at some point after the videotaping of that inspection, Quality Metal installed a clear plexiglass shield on the machine as a safety measure. Atlantic Mutual informed plaintiff that the tape would not be surrendered voluntarily, and plaintiff filed a petition for rule to show cause why Atlantic Mutual should not be found in contempt of court. The court issued an order accordingly, and Atlantic Mutual, in response, sought the court's protection on the basis of privilege and work product pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220).

At the subsequent hearing on the petition, Judge Eagleton ruled in Atlantic Mutual's favor, denied plaintiff's motion for a finding of contempt and entered a protective order as requested by the insurer. Plaintiff then moved for reconsideration. The motion was ultimately heard by Judge Courson and granted. The court ordered Atlantic Mutual to produce the videotape, "after having made any audio deletions deemed necessary at the expense of the plaintiff." Counsel for Atlantic Mutual stood on his claim of protection from

disclosure. The court consequently found the insurer's attorney in contempt for his refusal to produce and sentenced him as aforesaid.

 The parties on appeal invite our interpretation of Supreme Court Rule 220(c)(5), which states:

> "The identity, opinions and work product of consulting experts are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means. However, documents, objects and tangible things as defined in Rule 214 which are in the possession of a consulting expert and which do not contain his opinions may be obtained by a request for that purpose served upon the party retaining him." (134 Ill. 2d R. 220(c)(5).)

Atlantic Mutual claims the protection of Rule 220(c)(5) on the ground that the videotape is its consulting expert's work product. The insurer argues that the exemption permitting discovery when the party seeking discovery of a consulting expert's work product shows "exceptional circumstances" has not been met by plaintiff. In response, plaintiff contends first that Rule 220 applies only to "parties," and since Quality Metal, Atlantic Mutual's insured, has not been named as a party to this suit, the work product privilege is not available to Atlantic Mutual. We agree.

 " '[T]he term "parties" is a technical word which has a precise meaning in legal parlance. It designates the opposing litigants in a judicial proceeding—the persons seeking to establish a right and those upon whom it is sought to impose a corresponding duty or liability *** .' " (*Evans v. Stoval* (1980), 83 Ill. App. 3d 257, 259-60, 403 N.E.2d 1321, 1323, quoting 59 Am. Jur. 2d *Parties* §7 (1971).) The discovery rules (134 Ill. 2d Rules 201 through 224) are carefully drafted to distinguish between "parties" and other persons (*e.g.*, 134 Ill. 2d R. 202 ("any party or person"); 134 Ill. 2d R. 214 ("a person not a party"); 134 Ill. 2d R. 215 ("[a] party or person"); and 134 Ill. 2d R. 219 ("a party or other deponent" and "a party, or any person at the instance of or in collusion with a party")). Thus, the rules preserve the integrity of the technical legal distinction between "parties" and all other persons.

 Rule 220 controls discovery with respect to expert witnesses and consulting experts and defines these experts only in terms of their qualifications and their roles as potential or anticipated witnesses for parties at trial. The rule discusses the duties and privileges of "parties" in the discovery of a "party's" expert

witness' or consulting expert's identity, opinions and work product. The rule makes no reference to discovery rights or privileges for other persons, potential parties or nonparties. If the rule drafters had intended to extend privileges or protections to nonparties, the rule could easily have been drafted to accomplish this purpose. This lack of reference to nonparties leads us to believe that the drafters of the rule did not intend to extend the privilege of nondisclosure contained in subparagraph 5 to persons who are nonparties to the action in which the discovery is sought.

Atlantic Mutual next raises the question as to whether the rule was intended to provide less protection for persons not involved in the litigation than it does for those who are. The committee comments to Rule 220 provide no guidance, and we are aware of no legal precedent on this point. However, we must concede that an anomalous situation is created if the protection from discovery afforded "parties" by the rule is unavailable to nonparties. This anomaly is particularly unsettling here because of Atlantic Mutual's obvious interest in the litigation as insurer of the decedent's employer. For this reason, we decline to rest our decision alone on Rule 220(c)(5)'s apparent inapplicability to nonparties.

■■ ■ Whether the videotape is subject to protection under Rule 220(c)(5) as "work product" or is discoverable as under Rules 220(c)(5) and 214 as an "object or tangible thing" is another aspect of the dispute before us. Although not directly on point, our supreme court provides guidance in a recent decision in which the court reviewed the work-product doctrine in the context of litigation files prepared in a toxic tort case and sought by the defendant's insurer in a subsequent declaratory judgment action to determine insurance coverage issues. (*Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 196.) The court there noted that Rule 201(b)(2) defines "work product" as "[m]aterial prepared by or for a party in preparation for trial[. It] is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." The court then stated:

"Illinois has taken a narrow approach to the discovery of attorney work product. The overriding considerations under our discovery rule are ascertainment of the truth and expedited disposition of the lawsuit. (*Monier v. Chamberlain*, 35 Ill. 2d at 361[, 221 N.E.2d 410].) Thus, under our rule, ordinary work product, which is any relevant material generated in preparation for trial which does not disclose 'conceptual

data' (*Monier*, 35 Ill. 2d at 360[, 221 N.E.2d 410]), is freely discoverable (134 Ill. 2d R. 201(b)(2)). Opinion or 'core' work product, which consists of materials generated in preparation for litigation which reveal the mental impressions, opinions, or trial strategy of an attorney, is subject to discovery upon a showing of impossibility of securing similar information from other sources. *Monier*, 35 Ill. 2d at 360[, 221 N.E.2d 410]." (144 Ill. 2d at 196.)

The court in *Waste Management* determined that the work product rule was not intended to bar discovery of defense counsel's mental impressions and case assessment, as they related to the underlying litigation, in the "subsequent" declaratory judgment action. Since the attorney's impressions in the underlying action did not necessarily disclose the attorney's impressions in the declaratory judgment action, the court ruled that the purpose of the work product doctrine was not served and thus it was not available to protect defendant's litigation files from the insurer's discovery. The court further ruled that even if the work product doctrine were applicable, the "at issue" exception to the work product protection as developed by Federal case law would require disclosure of the litigation files in the declaratory judgment action.

In this case, of course, it is not an attorney's work product that is at issue, but the claimed work product of a consulting expert. Although there are obvious differences in the two types of work product, we believe the need to protect them from unnecessary discovery by an adverse party arises from similar considerations. In both cases, the party employing the attorney or expert justifiably believes that the person he has hired possesses some mental ability, technical expertise and/or superior strategy that could make a difference in that party's success in the litigation at hand. It is not unfair to impose on the opposing party the same burden of hiring an attorney or expert to counter the other party's attorney's or expert's mental impressions, theory or strategy without revealing such conceptual data (core work product) before trial. On the other hand, where the material gathered or produced by an attorney or expert is of a more concrete nature (ordinary work product or "tangible thing") and does not expose the attorney's or expert's mental processes, it serves the judicial process and is not unfair to require the parties to mutually share such material and analyze it prior to trial.

■ Ignoring for the moment that Atlantic Mutual is not a party to this litigation, we find that the videotape here at issue is a

"tangible thing" as contemplated by Rule 220(c)(5) subject to disclosure without a showing of exceptional circumstances. Atlantic Mutual argues that a videotape discloses an expert's thought processes and case evaluation by the movement, angle, distance and duration of focussing on various aspects of the expert's field investigation. However, such subtleties do not convince us that the videotape is thus transmuted into "core work product" or "conceptual data" in need of protection.

Moreover, to the extent that an expert's mental processes would be exposed in the manner suggested, we believe that the same could be said with respect to a tape-recorded interview. Our research reveals that tape-recorded statements have been consistently included as falling within the ambits of Rule 16(b) of the Federal Rules of Criminal Procedure as discoverable tangible objects without a showing of need or special circumstances. (See, *e.g.*, *United States v. Fallen* (8th Cir. 1974), 498 F.2d 172; *United States v. Bryant* (D.C. Cir. 1971), 439 F.2d 642; *United States v. Isa* (7th Cir. 1969), 413 F.2d 244; *Davis v. U.S.* (5th Cir. 1969), 413 F.2d 1226; *United States v. Iovinelli* (N.D. Ill. 1967), 276 F. Supp. 629.) These Federal cases, no less than the court in *Waste Management*, recognize that justice is best served by full and fair disclosure and that any interest that the party recording a conversation, surreptitiously or otherwise, may have in denying production of a defendant's taped conversation must fall to the overriding judicial interest in finding the truth. While we recognize the distinction between the Federal criminal cases and the case before us today, we believe that the underlying concern for fairness and finding the truth, as expressed by our supreme court and the Federal cases requiring disclosure of taped statements, is applicable here as well.

■ In our opinion, the truth-seeking interest in a civil case is sufficiently compelling to require disclosure of Atlantic Mutual's consulting expert's videotaped field investigation without a showing of exceptional circumstances. Atlantic Mutual's legitimate concerns for protecting its consulting expert's work product are adequately addressed by the trial court's order to the extent that the order properly permits deletion of the expert's audible thought processes that would be entitled to protection under Rule 220(c)(5). Our ruling obviates any need to discuss whether plaintiff has shown exceptional circumstances in his request for production.

Based on our finding that the trial court did not err in ordering Atlantic Mutual to produce the videotape, we further find that the court had authority to enforce its order with civil contempt sanc-

tions. We recognize that the civil contempt procedure was the only vehicle by which the issue could be brought to our attention; and we understand that by turning the tape over pursuant to the court's order, counsel will be purged of contempt.

The judgment of the circuit court of Peoria County is affirmed, and this cause is remanded for further proceedings.

Affirmed; cause remanded.

GORMAN and HAASE, JJ., concur.