MIDWESCO-PASCHEN JOINT VENTURE FOR THE VIKING PROJECTS, Plaintiff-Appellee, v. IMO INDUSTRIES, INC., Defendant-Appellant (Federal Insurance Company, Defendant).

First District (6th Division)  No. 1—92—3306

Opinion filed July 15, 1994.

James G. Hunter, Jr., Alan J. Wertjes, and David F. Randell, all of Latham & Watkins, of Chicago, for appellant.

Ira J. Bornstein and Martin D. Tasch, both of Chicago (Barnett, Bornstein & Blazer, Ltd., of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the defendant, Imo Industries, Inc. (Imo), from an order holding it in contempt for refusing to comply with a discovery order.

The underlying dispute in this case involves the performance of

three steam turbines sold to the plaintiff, the Midwesco-Paschen Joint Venture for the Viking Projects (Midwesco), by Imo for use in Midwesco construction. Imo and Midwesco executed purchase agreements for these turbines. Imo warranted that the turbines would satisfy stated performance guidelines. The agreements have a liquidated damages clause for computation of damages owed to Midwesco if the turbines did not meet the stated requirements. Midwesco alleged that the turbines failed to meet the agreed minimum performance levels and that Imo was liable for liquidated damages.

Midwesco and Imo both ran tests on the equipment. They were unable to resolve their dispute, and on May 10, 1990, Midwesco filed a complaint seeking recovery of what it argued was the amount due under the liquidated damages clause.

Midwesco served a request to produce documents on Imo. Contrary to Midwesco's assertions in this court, Midwesco's attorneys visited Imo's principal place of business in New Jersey and obtained copies of many requested documents. Imo withheld other documents, however, under claims of privilege. Judge Jerome Burke ordered Imo to produce a log of all documents that it was withholding. Imo eventually produced its log which contained 32 pages of small print listing the 171 documents or groups of documents for which Imo claimed a privilege. Much of the language used in the Imo log to describe the documents is boilerplate and gives us little idea of what each document contains. For example, 27 documents for which the attorney-client privilege was claimed are described with identical language, and the majority of the documents withheld are described as "contain[ing] facts and theories regarding possible liability and nonliability." Cf. *Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 187, 579 N.E.2d 322 ("Insureds provided the court with a detailed log of the withheld documents").

Midwesco filed a motion stating that the parties were unable to reach any accord on discovery and requested that the judge make an *in camera* inspection of all documents listed on Imo's privileged documents log. On July 9, 1992, after reviewing four boxes of documents, Judge Joseph Casciato ordered Imo to produce most documents listed on its log. Imo refused to comply in full with the order and was found in contempt and fined $100.

●1 Because this case involves the invocation of the attorney-client privilege by a corporation, our discussion appropriately begins with the principles of law enunciated in *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 432 N.E.2d 250. In *Consolidation Coal*, the supreme court held that not every communication made by an

employee of a corpora` .. · to the corporation's attorney is privileged. The court held that a . .. 'imiting the privilege to employees forming "top management" w. : ... narrow and adopted an expanded version of a control-group te:: Under that test, there are two tiers of corporate employees whose communications with the corporation's attorneys are protected. The first tier consists of the decision-makers, or top management. The second tier consists of those employees who directly advise top management, and upon whose opinions and advice the decision-makers rely. (*Consolidation Coal*, 89 Ill. 2d at 120.) The court also said that the person claiming privilege has the burden of showing facts which give rise to the privilege; the claimant must show that the communication originated in a confidence that it would not be disclosed; that it was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services; and that it remained confidential. *Consolidation Coal*, 89 Ill. 2d at 119.

●2 Before we determine whether Imo has met its burden, we will address the parties' claims of the applicable standard of review. Midwesco maintains that the judge's order must be affirmed unless we determine that he abused his discretion. Imo maintains that we must review the record *de novo*. We do not agree with Midwesco that an abuse of discretion is the proper standard *in this case*, although we concede that Midwesco has cited language from other cases which seemingly supports its argument. In *Maxwell v. Hobart Corp.* (1991), 216 Ill. App. 3d 108, 576 N.E.2d 268, the appellate court considered whether documents were protected from discovery because of two statutes. The court made a preliminary statement that it would not disturb a discovery ruling on appeal absent a manifest abuse of discretion and cited *Computer Teaching Corp. v. Courseware Applications, Inc.* (1990), 199 Ill. App. 3d 154, 556 N.E.2d 816. We note that *Computer Teaching* involved a trial judge's determination of the relevancy of the material sought to be discovered. Similarly in *Maxwell*, the court made its own evaluation of the facts and agreed with the trial judge's holding that certain records were "relevant and probative to issues in the case." (*Maxwell*, 216 Ill. App. 3d at 114.) In the other case cited by Midwesco, *Profesco Corp. v. Dehm* (1990), 196 Ill. App. 3d 127, 533 N.E.2d 101, an attorney who had been held in contempt for refusal to obey a discovery order asked on appeal that his fines be vacated. He argued that he had acted in good faith. The appellate court held that the trial judge was in the best position to determine whether a party's conduct amounted to a deliberate or contumacious flouting of judicial authority and that the trial judge's exercise of his discretion should be afforded considerable deference. Neither case cited by Midwesco is applicable to the facts in this case.

In *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 487 N.E.2d 937, the issue was whether material was protected from discovery by provisions of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 8—2101, 8—2102). A medical malpractice claim was made against several defendants, including Northwestern Hospital. The plaintiff subpoenaed records in the possession of the Joint Commission on Accreditation of Hospitals which related to Northwestern's accreditation. The Commission refused to comply with the subpoena and, after a hearing, was fined for contempt.

At the hearing the Commission introduced an Accreditation Manual for Hospitals, which describes the purposes of the Commission and the procedures it followed. The purpose of the introduction of the manual was to show that the Commission was one of the "allied medical societies" as that term was used in section 8—2101 of the Code. The moving parties argued that the record was insufficient to warrant the quashing of their subpoena because there was no affidavit supporting the introduction of the manual. To that argument, the supreme court said this in reversing the contempt order:

> "*The applicability of a discovery privilege is a matter of law for the court to determine,* but the question of whether specific materials are part of a medical study is a factual question within that legal determination. Hence, if plaintiffs had desired to challenge the authenticity or accuracy of the accreditation manual they would have been entitled to a verification of the manual or an evidentiary hearing on the matter. Instead, plaintiffs chose to oppose the motion to quash solely by arguing that the materials, gathered and used as described in the accreditation manual, were not protected by section 8—2101. They cannot now object that affidavits were not filed and an evidentiary hearing was not held." (Emphasis added.) *Niven*, 109 Ill. 2d at 368.

A number of cases have addressed the factual issue of whether an employee is a member of a control group, but none of the cases discussed the applicable standard of review. In *Mlynarski v. Rush-Presbyterian-St. Luke's Medical Center* (1991), 213 Ill. App. 3d 427, 572 N.E.2d 1025, the appellate court reversed a judge's finding that the defendant had not maintained its burden of showing that the employee was a member of the control group. In *Claxton v. Thackston* (1990), 201 Ill. App. 3d 232, 559 N.E.2d 82, the appellate court held, as a matter of law, that the factual allegations of the employee's affidavit did not establish that the employee was a member of the corporation's control group. In *Archer Daniels Midland Co. v. Koppers Co.* (1985), 138 Ill. App. 3d 276, 485 N.E.2d 1301, the trial judge made a finding that an employee was not a member of a control

group and that the privilege did not apply. The appellate court affirmed but in so doing made an extensive analysis of the evidence and made its own conclusion that the employee "was not part of the control group." *Archer Daniels*, 138 Ill. App. 3d at 280.

In *Knief v. Sotos* (1989), 181 Ill. App. 3d 959, 537 N.E.2d 832, the plaintiff maintained that the trial judge abused his discretion when he held that certain employees were members of the control group. The appellate court reversed the trial judge and held, as a matter of law, that the defendants failed to meet their burden of proving that the employees were members of the control group. The court did not say, as the plaintiff suggested, that the trial judge abused his discretion.

Last, in *CNR Investments, Inc. v. Jefferson Trust & Savings Bank* (1983), 115 Ill. App. 3d 1071, 451 N.E.2d 580, the appellate court held that, as a matter of law, the defendant had failed to establish that the document was prepared in confidence; that two other documents were prepared by members of a corporation's control group; and that another document was prepared with the expectation that it would remain confidential.

After reviewing all these cases and applying the holding of *Nivens* that the applicability of a discovery privilege is a matter of law for the court to determine, we judge that all the factors which the party invoking privilege must establish shall be reviewed under a *de novo* standard. It would be illogical to review a judge's finding as to one factor under a manifest weight of the evidence standard or an abuse of discretion standard and other findings of other factors under a *de novo* standard.

We turn now to the exhibits for which Imo claims privilege. The first four documents are exhibits 1 through 4. They are communications sent by Thomas O'Brien to Gary Walker. O'Brien is Imo's senior counsel. Walker is the general manager of the turbine division of Imo.

First, we agree with Imo that Midwesco has waived any argument that Walker is not a member of the control group. Second, we reject Midwesco's argument that only communications from a client to an attorney are covered by the attorney-client privilege and not communications from the attorney to the client. Midwesco cites *Consolidation Coal* and *Dalen v. Ozite Corp.* (1992), 230 Ill. App. 3d 18, 594 N.E.2d 1365, in support of its argument that the exhibits are not privileged because they were sent from the lawyer to the employee. In *Consolidation Coal*, the court, relying on *Wigmore*, noted the "threshold requirements" of the attorney-client privilege, including "a showing that the communication *** was made *to* an

attorney acting in his legal capacity for the purpose of securing legal advice or services." (Emphasis added.) (*Consolidation Coal*, 89 Ill. 2d at 119.) Midwesco bases its argument on this use of the word "to." We do not believe that *Consolidated Coal* is to be read as broadly as Imo suggests. That case did involve a communication from an employee to the attorney, and the language which Midwesco seizes upon was addressed to the facts of that case.

In *Dalen*, a corporation, Ozite, argued that a memorandum written by its attorney was not discoverable by the plaintiff, Dalen. As its response to Dalen's document production request, Ozite allowed Dalen's attorney access to all of its files. While examining *Ozite's* files, Dalen's attorney found the memorandum. The trial judge determined that Ozite waived its attorney-client privilege. The appellate court affirmed the trial judge, but not on the ground upon which the trial judge had relied or that the parties had argued. The appellate court held that the attorney-client privilege did not apply because the memorandum in issue was not written by the client for the attorney but rather by the attorney for the client. The court held that the document was subject to the work product privilege but that Ozite had waived the privilege.

Other authority supports Imo's position. In *In re Marriage of Granger* (1990), 197 Ill. App. 3d 363, 554 N.E.2d 586, the trial court held that a recorded conversation between an attorney and his client was not covered by the attorney-client privilege because the attorney and client discussed the commission of a crime, perjury. While discussing the attorney-client privilege, the appellate court explained that "[t]he privilege applies not only to the communications of a client to his attorney, but also to the advice of an attorney to his client." *Granger*, 197 Ill. App. 3d at 374.

●3 The supreme court rule governing discovery and the attorney-client privilege, Rule 201(b)(2) (134 Ill. 2d R. 201(b)(2)), explains that privileged matters including "communications *between* a party or his agent and the attorney for the party" may not be discovered. (Emphasis added.) Finally, Professor Graham explains that the privilege applies to communications "between the client or her representative and her lawyer or her lawyer's representative." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 505.2, at 269 (5th ed. 1990).) We conclude that *Granger* is more in keeping with Rule 201(b)(2) and with the purpose of the attorney-client privilege in Illinois. We must express respectful disagreement with *Dalen*.

●4 Exhibit 1 is a memo from O'Brien to Walker dated November 16, 1989. It advises Walker on the legal effect of actions proposed by Walker. In his affidavit, O'Brien stated that this memo communicates

legal advice to Walker "regarding [O'Brien's] review of suggested responses to communications from [Midwesco.]" O'Brien also stated that the communication remained confidential. We judge that exhibit 1 is protected from discovery by the attorney-client privilege. The memo gives specific legal advice from an attorney to a control group member on a particular legal matter and was kept privileged. Thus, the judge should not have ordered Imo to produce exhibit 1.

•5 Exhibit 2 is a November 27, 1989, cover memo from O'Brien to Walker attached to a proposed letter to Viking Energy Corporation (Viking). Apparently, Viking is the party who hired Midwesco to construct three power plants. The turbines Imo sold to Midwesco were placed in these three Viking plants. The cover memo does nothing more than request Walker's comments on the proposed letter to Viking. Midwesco argues that, because the complaint had not been filed on November 27, 1989, the attorney-client privilege cannot apply to this exhibit.

We hold that the documents in exhibit 2 are not covered by the attorney-client privilege, but not for the reason asserted by Midwesco. There is no requirement that suit be filed before the attorney-client privilege attaches. (*Cf. Consolidation Coal*, 89 Ill. 2d at 119; *Mlynarski*, 213 Ill. App. 3d at 430.) However, Imo has not carried its burden of proving that this exhibit involves confidential legal advice. In fact, it could not be considered legal advice. O'Brien actually requests "comments" from Walker.

•6 Exhibit 3 is a November 29, 1989, cover memo from O'Brien to Walker with an attached draft letter from Imo to Viking. The letter discusses an Imo-Midwesco settlement proposal as well as negotiations between Imo and Viking. The exhibit itself contains no specific statements to Walker, but simply has a "to/from" cover sheet on the top of the draft letter indicating that O'Brien forwarded the draft letter to Walker. Imo does not argue that the settlement nature of the communication makes it privileged. We hold that exhibit 3 is discoverable. Imo has not shown how a draft letter from its attorney to *some outside company*, accompanied by a simple to/from cover memo, constitutes confidential legal advice to the attorney's client.

•7 Exhibit 4 contains a May 24, 1990, cover memo from O'Brien to Walker, a copy of the complaint filed against Imo by Midwesco, and a May 21, 1990, letter from O'Brien to Imo's outside counsel who had been retained to represent Imo. Copies of the cover memo to Walker were sent to Ken Terryberry and Douglas Peacock, allegedly members of Imo's control group.

Imo argues that the exhibit is protected by the attorney-client privilege because it explained "the action Imo should take in prepa-

ration for responding to [Midwesco's] allegations." It does not. The first letter simply informs Walker of the retention of the outside counsel and the hope that O'Brien would be able to get together with Walker. The second letter to the retained counsel confirms a meeting date.

•8 The next group of exhibits in issue are numbered 5 through 12 and involve communications between O'Brien and Kenneth Terryberry. Midwesco's first claim is that Terryberry was not a member of the control group. According to Terryberry's affidavit, he was the field service manager of Imo's turbine division. He had several discussions with O'Brien and other Imo attorneys involving Midwesco's allegations and reviewed data prepared by several people regarding the turbines. Terryberry personally determined the extent of Imo's possible liability to Midwesco.

In O'Brien's affidavit, he explained that Terryberry had "direct managerial responsibility over the field service department" and was "deeply involved with decisions concerning the turbines sold to [Midwesco.]" In fact, "[d]ecisions concerning turbines" sold by Imo were "not normally made without [Terryberry's] involvement." Further, according to O'Brien, Terryberry was "heavily involved in investigating and analyzing [Midwesco's] allegations." O'Brien and Peacock, an Imo vice-president, requested that Terryberry attend settlement meetings with Midwesco. O'Brien explained that Terryberry had "direct and frequent" contact with Midwesco regarding the turbines sold to Midwesco. O'Brien frequently discussed "issues concerning" these three turbines with Terryberry. Finally, and most important, Walker stated in his affidavit that he relied on Terryberry's advice "in making decisions concerning Imo's potential liability" to Midwesco.

We judge that the uncontradicted affidavits of Imo's employees are sufficient to show that Terryberry was a member of Imo's control group. (*Cf. Mlynarski*, 213 Ill. App. 3d at 432.) The case cited by Midwesco, *Knief v. Sotos* (1989), 181 Ill. App. 3d 959, 537 N.E.2d 832, is factually wide of the mark. In that case it was claimed that a bar's head manager and head waitress were part of the bar's control group. There was no evidence presented that the manager and waitress were normally consulted for their opinions. The only thing that was offered by the party claiming privilege was the job title of the bar manager and waitress. There was no evidence of what their duties entailed.

•9 Exhibit 5 contains an undated handwritten note from Terryberry to O'Brien and refers to several attached March 1989 letters from Midwesco and Viking. The note refers to a suggested course of

action by Walker with reference to the letters from Midwesco and Viking and asks for O'Brien's advice. We judge that the note from Terryberry to O'Brien is covered by the attorney-client privilege and is not discoverable, but the letters from Viking are not privileged. (Needless to say, neither are the letters from Midwesco.) The exhibit also includes a letter from T.E. Iden to Federal Insurance Company. Imo has not established that that letter is covered by the attorney-client privilege.

●10 Exhibit 6 contains two memos on one piece of paper. The top memo is an October 17, 1989, memo from O'Brien to Terryberry. Imo never identified several of the 11 people who received exhibit 6 and does not argue that all of these individuals are members of the control group. We note that the trial judge expressly held that D. Guttshall, one of the persons to whom the memo was sent, was not a member of the control group. Imo makes no issue of that finding. Distribution of otherwise privileged material to individuals outside of the control group destroys the privilege. *CNR Investments*, 115 Ill. App. 3d at 1075.

●11 Exhibits 7 and 8 are August and September 1989 letters from O'Brien to Terryberry regarding responses O'Brien drafted to Midwesco letters. In exhibit 7, O'Brien requests Terryberry's comments on the responses, and in exhibit 8 O'Brien explains the responses. Neither exhibit gives any suggestions to Terryberry regarding legal conclusions, and neither advises Terryberry on any future course of action. Contrary to Imo's argument in this court, the exhibits do not contain O'Brien's legal advice. They were discoverable.

Exhibit 9 is actually exhibit 6. We hold that exhibit 9 was discoverable for the same reasons we have ascribed to exhibit 6.

●12 Exhibit 10 also contains two memos on one page. That exhibit also was sent to five other people, including Guttshall. We hold that the document was not kept confidential and, therefore, was discoverable.

●13 Exhibit 11 is a memo from O'Brien to Terryberry requesting specific dates. Written at the bottom is a February 19, 1990, memo from Terryberry to O'Brien giving the requested information. In O'Brien's affidavit, he explained that the February 16 memo remained confidential; he does not assert that the February 19 memo was kept confidential. In fact, we cannot see how or why the information that O'Brien received from Terryberry would have remained confidential. For that reason, we hold that exhibit 11 was discoverable.

●14 Exhibit 12 is a letter from O'Brien to Terryberry on April 17, 1990. Attached to the memo was a release form to be submitted to

Viking. We agree with Imo that the memo contains specific legal advice to Terryberry and that it is not discoverable.

●15 In its opening brief, in a footnote, Imo argues that exhibits 7 through 12 are also protected from discovery by the attorney work product doctrine. This footnote cites no case law, and in its entirety provides:

> "In addition to being protected from discovery by the attorney-client privilege, Exhibits 7—12 are also protected under the work product doctrine. Each of these documents reflect the 'theories, mental impressions, or litigation plans' of Imo's counsel and are therefore not discoverable."

In its reply brief, Imo changes its work product argument and states only that exhibits 6 and 10 are protected work product. Again, Imo cites no case law in support of its assertions.

We refuse to address this cursorily raised argument, which was never raised in the trial court, and hold that Imo has waived this contention. See *People v. Saunders* (1991), 220 Ill. App. 3d 647, 580 N.E.2d 1246.

●16 Imo's last claim is that exhibits 13 through 77, prepared by Richard Schifler, are protected from discovery because Schifler was a "consulting expert"; that the documents were work product within the meaning of Supreme Court Rule 201(b)(2); and that the reports were attorney-client communications.

Some preliminary observations are appropriate:

(1) Imo misunderstands who has the burden of proof when it argues that "[Midwesco] failed to submit even a shred of evidence that refutes Imo's claim concerning the materials prepared by Schifler."

(2) Imo has waived any claim as to exhibits 76 and 77 because the record does not contain exhibits 76 and 77.

(3) We will consider only exhibits 13 and 14 because only those exhibits are addressed in Imo's briefs. In *Consolidation Coal*, the supreme court said that "[t]o impose upon the trial bench of this State the burden of reviewing voluminous material of this character would be totally incompatible with the efficient disposition of litigation." (*Consolidation Coal*, 89 Ill. 2d at 110.) That observation of the supreme court was noted in *Mlynarski*. (*Mlynarski*, 213 Ill. App. 3d at 433.) We believe that observation should be applicable in courts of review as well as trial courts. We refuse to be used as a repository of Imo's exhibits and to sift through them in an attempt to divine in what manner they may come within the ambit of the exception to discoverable material. *Cf. In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 288 N.E.2d 520.

Richard Schifler is identified as an "independent steam turbine consultant." In his affidavit he made the conclusional assertion that he was retained by Imo to assist it in determining its liability or non-liability under the liquidated damages clause. (We note that such an assertion could be made by any expert retained by a party facing an adverse claim.) He was requested to investigate and analyze Midwesco's allegations. He wrote several formal reports, exhibits 13 and 14. Exhibit 13 is Schifler's final "Report of Performance Test Results," and is dated February 28, 1990. Exhibit 14 is also a "Report of Performance Test Results," and is dated July 7, 1989. Schifler was instructed by Imo's counsel not to release the reports to anyone other than Imo's attorneys. He gave both reports directly to Imo's attorneys. During the course of his analysis he also created numerous other documents. We infer that they are exhibits 15 through 77.

Imo contends that Schifler was a consulting expert within the definition of Supreme Court Rule 220 and that his reports are protected consulting expert work product. Rule 220 provides that a consulting expert is:

"a person who possesses the same qualifications as an expert witness and who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial to render opinions within his area of expertise." (134 Ill. 2d R. 220(a)(2).)

According to the rule, the "identity, opinions and work product of consulting experts are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery" to obtain similar facts or opinions. 134 Ill. 2d R. 220(c)(5).

There is very little law applicable to consulting experts and the discovery of their work product under Rule 220. The Committee Comments provide that this rule "recognizes the difference between an expert who is to testify at trial and one who is retained to advise the parties without expressing an opinion under oath." (Ill. Rev. Stat. 1989, ch. 110A, par. 220, Committee Comments, at 439 (Smith-Hurd 1985).) The comments explain that a consulting expert "is a resource person whose retention is often essential to an appreciation of the technical aspects of a claim." We do not agree with Midwesco's argument that Schifler was an occurrence witness and that he was not retained in anticipation of litigation. But we do not agree with Imo that Schifler's reports are protected.

Imo argues that Schifler's reports, exhibits 13 and 14, contain his opinions and his analysis of Imo's liability. Each report lists a great deal of turbine performance test data. Exhibit 13 includes data from

tests of all three turbines; exhibit 14 involves only one turbine. Each includes many calculations and diagrams with explanations of the formulas used. The reports note the applicable industry standard formulas and computations. Many of the reported calculations appear to involve the liquidated damages formula, and several explicitly refer to the purchase agreement's requirements. There is very little text in these long reports, and most of the pages involve charts, formulas and tables. Each exhibit contains a very short conclusion section, which summarizes the numerical performance results and then explains whether each result is higher or lower than the rate or number required by the purchasing agreements.

Imo does not cite any authority to show that the material in Schifler's report is work product, and, in fact, never even attempts to argue this point. Imo simply concludes that what Schifler prepared as a consulting expert must necessarily be work product. In other words, Imo's argument appears to be that all it need show is that Schifler was a consulting expert.

In *Neuswanger v. Ikegai America Corp.* (1991), 221 Ill. App. 3d 280, 582 N.E.2d 192, the only reported Illinois case addressing the discoverability of a consulting expert's work product that we have found, the parties did not dispute that an insurance field inspector was a consulting expert. The inspector had prepared a video tape, with narration, showing the machine at issue operating under the conditions present when the victim was killed by the machine. The victim's estate requested the video tape in discovery. The trial judge ordered the video tape produced but allowed "audio deletions" to eliminate the expert's statements of opinion.

The appellate court determined that the tape was not protected work product and affirmed the trial judge. The court held that the work product doctrine should be interpreted in the same manner for consulting experts as it is for attorneys as set forth in Rule 201(b)(2). (*Neuswanger*, 221 Ill. App. 3d at 285.) The court explained that work product in Illinois is a narrow doctrine, protecting only "materials generated in preparation for litigation which reveal the mental impressions, opinions, or trial strategy" of the attorney or consulting expert. (*Neuswanger*, 221 Ill. App. 3d at 285.) The court explained that parties should be required to bear the burden of obtaining their own experts to obtain special theories and opinions. But, "[o]n the other hand, where the material gathered or produced by an attorney or expert is of a more concrete nature *** and does not expose the attorney's or expert's mental processes, it *** serves the judicial process and is not unfair to require the parties to mutually share such material and analyze it prior to trial." (*Neuswanger*, 221 Ill. App. 3d

at 285.) Applying this standard, the court concluded that the video tape, while possibly disclosing some of the experts' thought processes through angle or focus, was not the type of opinion or theory that constitutes protected work product. *Neuswanger*, 221 Ill. App. 3d at 286.

The *Neuswanger* holding was consistent with the *Consolidation Coal* court's analysis of work product. In *Consolidation Coal*, the court found that a report containing "objective and material information consisting of mathematical computations, formulae, tables, drawings, *** [ ]industry specification data" was not work product. *Consolidation Coal*, 89 Ill. 2d at 111.

Applying *Neuswanger* and *Consolidation Coal*, we hold that exhibits 13 and 14 are not protected work product. The reports here contain information almost identical to the unprivileged *Consolidation Coal* report. The reports do not include Schifler's opinions or theories. They are simply a compilation of data from the operation of the turbines and calculations based on that data. Schifler's conclusions in each report are nothing more than a simple addition or subtraction of his mathematical results from the purchase agreement's requirements.

Imo also claims that the exhibits are protected under the attorney work product doctrine. In support of its argument Imo cites the language in *Mlynarski* that the attorney work product doctrine applies to documents prepared by the "attorney's agent or investigator," citing *United States v. Nobles* (1975), 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160. *Mlynarski*, 213 Ill. App. 3d at 432.

Whether Schifler could be considered Imo's agent or investigator is highly questionable. In *Mlynarski*, it was accepted that the person for whose reports the corporation claimed privilege was the corporation's agent; she was a coordinator in the corporation's risk management office. She conducted the investigation of the accident on behalf of the corporation. She interviewed witnesses. The document in issue was a memorandum she prepared which contained summaries of statements of the witnesses she interviewed. But whether Schifler could be considered an agent or investigator we need not decide, because we conclude that the attorney work product rule is not applicable here. The advice of an expert to an attorney concerning technical matters and technical interpretation of facts is not protected from discovery. (*Akers v. Atchison, Topeka & Santa Fe Ry. Co.* (1989), 187 Ill. App. 3d 950, 543 N.E.2d 939.) The final reports prepared by Schifler do not even include advice; they are simply data compilations with corresponding calculations. We reject Imo's assertion of the attorney work product doctrine for Schifler's reports.

Finally, Imo argues that the attorney-client privilege covers exhibits 13 and 14, which were sent from Schifler to O'Brien and were kept confidential.

On this point Imo relies on Federal law, despite the clear emphasis in *Consolidation Coal* that Illinois will use the control group test and will not apply the Federal test for attorney-client privilege to corporations. As the *Consolidation Coal* court made clear, only members of a corporate control group may protect their communications with a corporate attorney through the attorney-client privilege. Imo makes no claim, nor could it, that Schifler is a control group member. We therefore hold that because he is not a member of the control group, the attorney-client privilege does not apply. See *Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 327 N.E.2d 92.

In summary, we conclude that exhibits 1, 5 and 12 are not discoverable and the order is modified to exclude them from the exhibits which Imo is required to produce. The order is affirmed in all other respects.

Before closing this opinion, we believe some additional observations are appropriate. This case is but one more of too many cases in which a large number of documents are dumped on a trial judge in a discovery dispute with the expectation that the trial judge will sift through them *in camera*.[1] After the judge does so and renders an adverse ruling, the party objecting to the discovery asks for and receives a nominal fine in order to have an appealable order. The documents are then dumped on the appellate court, again with the expectation that the appellate court will sift through the documents *in camera*. In order to pass on the trial judge's ruling on each document, the appellate court must examine each document *in camera*.[2] If the appealing party is unsuccessful in the appellate court, his only sanction is a nominal fine, assuming that the fine is not vacated after a claim that the party has purged himself of contempt by obedience to the discovery order. In our judgment, general acceptance of this procedure provides strong temptation to a party to raise frivolous objections to discovery requests, to refuse to obey discovery orders and thereby to delay proceedings. This is a result which was condemned in *Consolidation Coal* and noted in *Mlynarski*.

While sanctions may not be imposed simply to inflict punishment, neither should they be imposed automatically just to provide a party

---

[1]The trial judge did so with commendable thoroughness. He examined four boxes of exhibits, including exhibits 15 through 77.

[2]We have examined exhibits 1 through 14.

670

with an appealable order. The point we wish to make is that a trial judge, in the exercise of discretion, should consider whether the party refusing a discovery order has made at least a colorable claim of privilege. And if the trial judge determines that the party has not made a colorable claim of privilege, the judge should consider more than a nominal fine for the refusal to obey a discovery order. A wide range of sanctions is available including the striking of a pleading or even a default judgment. (See *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 226 N.E.2d 6.) There have been, and will be, discovery motions involving unique or unsettled questions of law which require resolution by a court of review. (See, *e.g.*, *Bua*, 37 Ill. 2d 180, 226 N.E.2d 6; *Monier v. Chamberlain* (1964), 31 Ill. 2d 400, 202 N.E.2d 15; and *People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 139 N.E.2d 780.) But this case certainly is not one of them. Indeed, even the three exhibits which we have held to be privileged contain little or nothing that would help Midwesco.

Order affirmed as modified.

RAKOWSKI and GIANNIS, JJ., concur.